**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| CHASE YARBROUGH, DONNA YARBROUGH and TROY YARBROUGH | § § § | |
| *Plaintiffs,* | § § | |
| | § | CIVIL ACTION NO.: |
| vs. | § § | |
| ANTONIOS PAGOURTZIS, ROSE MARIE KOSMETATOS, DIMITRIOS PAGOURTZIS, LUCKYGUNNER, LLC d/b/a/ LUCKYGUNNER.COM, RED STAG FULFILLMENT, LLC, MOLLENHOUR GROSS, LLC, JORDAN MOLLENHOUR, and DUSTIN GROSS, | § § § § § § § § | [REMOVED FROM CAUSE NO. CV-0086848 IN COUNTY COURT AT LAW NO. 3 OF GALVESTON COUNTY, TEXAS] |
| *Defendants.* | § | |

**NOTICE OF REMOVAL**

Defendant LuckyGunner, LLC d/b/a Luckygunner.com ("LuckyGunner"), Red Stag Fulfillment, LLC ("Red Stag"), Mollenhour Gross, LLC ("MG"), Jordan Mollenhour ("Mollenhour"), and Dustin Gross ("Gross") (collectively, the "Tennessee Defendants"), pursuant to 28 U.S.C. §§ 1331, 1332, 1441(b), 1441(c) and 1446, file this Notice of Removal and hereby notify this Court that it is removing the above captioned action currently pending in the Galveston County Court at Law No. 3 to the United States District Court for the Southern District of Texas, Galveston Division.   In support of this Notice of Removal, the Tennessee Defendants state as follows:

## I. PROCEDURAL HISTORY

1.      The underlying state court case is styled Civil Action No. CV-0086848, *Chase Yarbrough et al v. Antonios Pagourtzis et al*. in Galveston County Court at Law No. 3.

2.      This lawsuit arises from Dimitrios Pagourtzis' criminal shooting at Santa Fe High School on May 18, 2018.   Plaintiff Chase Yarbrough is a victim of Pagroutzis's crimes.

3.      On May 6, 2020, Plaintiffs filed their Original Petition (the "Petition") and Request for Disclosure.  (*See* Exhibit B-1, Petition).  The Petition named as defendants Dimitrios Pagourtzis and his parents, Antonios Pagourtzis and Rose Marie Kosmetatos, and the Tennessee Defendants: (1) LuckyGunner, (2) Red Stag, (3) MG, (4) Mollenhour, and (5) Gross. (*See* Exhibit B-1, Petition).

4.      The Tennessee Defendants accepted service of the Petition on May 12, 2020. (*See* Ex. B-12, Rule 11 Agreement).   This notice of removal is timely filed.  28 U.S.C. § 1446(b)(2)(B).  The United States District Court for the Southern District of Texas is the federal judicial district encompassing Galveston County, Texas.  Therefore, venue lies in this Court pursuant to 28 U.S.C. § 1441(a).

## II. THE COURT'S JURISDICTION OVER THIS MATTER

5.      This action is removed because of federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(c).  Under 28 U.S.C. § 1441(c)(2), only the parties named as defendants in connection with the federal law claims need join in or consent to removal.

As counsel for LuckyGunner, Red Stag, MG, Mollenhour, and Gross, undersigned counsel states that each of these defendants consents to and joins in the removal of this action.

6.      This action is also removed pursuant to 28 U.S.C. §§ 1332 and 1441(b). Under 28 U.S.C. § 1332, this Court has diversity jurisdiction of all matters (1) that are between citizens of different states where (2) the matter in controversy exceeds the sum or value of $75,000.  These prerequisites for diversity jurisdiction are met here because, *inter alia*, at the time of removal only the diverse Tennessee Defendants have been properly joined and served.

7.      The Petition shows that Plaintiffs are citizens of Texas, and the Tennessee Defendants are all citizens of Tennessee. (Ex. B-1, Petition at ¶2.1-2.12).  At the time of this filing, the non-diverse defendants, Antonios Pagourtzis, Rose Marie Kosmetatos, and Dimitrios Pagourtzis, have not been properly served pursuant to § 1441(b)(2), according to the Galveston County Court docket and the service-related documents contained therein. (*See* Exs. A-1, A-2, A-3, Citations and Returns of Service). Their citizenship is irrelevant at this juncture. Thus, there is complete diversity between Plaintiffs and the Tennessee Defendants.[1]

---

[1] The citizenship of the Tennessee Defendants is as follows: LuckyGunner is a Tennessee limited liability company with its principal place of business in Tennessee.  LuckyGunner's sole member is MG.  Red Stag is a Tennessee limited liability company with its principal place of business in Tennessee.  Red Stag's sole member is MG.  MG is a Tennessee limited liability company with its principal place of business in Tennessee.  MG's sole members are individual defendants, Jordan Mollenhour and Dustin Gross, who are also Tennessee citizens.  For the purposes of diversity jurisdiction, none of these defendants are citizens of Texas.

8.     The amount in controversy is also satisfied.  Plaintiffs seek to recover from the Tennessee Defendants damages resulting from Dimitrios Pagourtzis shooting.  "[T]he Yarbrough Plaintiffs seek more than $1,000,000.00 in monetary damages."  (Ex. B-1, Petition at ¶3.2; *see also id*. at ¶¶8.1-8.3).  The amount in controversy exceeds the $75,000 threshold.

9.     Because the elements of complete diversity and jurisdictional amount are met, this Court has diversity jurisdiction pursuant to 28 U.S.C § 1332, and removal to this Court is proper.

### III.  PLAINTIFFS' CLAIMS AGAINST THE TENNESSEE DEFENDANTS

10.     Plaintiffs allege that Pagourtzis purchased ammunition from LuckyGunner through LuckyGunner's website, and that he used the ammunition purchased from LuckyGunner to perpetrate his crimes.  (*See e.g.*, Ex. B-1, Petition at ¶¶5.1-5.4).  Plaintiffs allege that defendant Red Stag, a third-party logistics company, packaged and shipped the ammunition to Pagourtzis and FedEx delivered it.  (*Id*. at ¶5.11).  MG, Mollenhour and Gross's connection to this to this lawsuit is that they are alleged to own the two other defendants, LuckyGunner and Red Stag.  (*Id*. at ¶6.58).

11.     Plaintiffs seek to hold the Tennessee Defendants liable for the damages caused by Pagourtzis's criminal acts based on tort claims of negligence and negligence per se.  (*Id*. at ¶¶6.8-6.23, 6.34-6.47).   Aside from these two claims, Plaintiffs assert various forms of derivative or collateral counts, including that the Tennessee Defendants were grossly negligent, and that vicarious liability exists between and amongst them—claims

4

styled as "Civil Conspiracy" and "Piercing the Corporate Veil".   (*Id.* at ¶¶6.48-6.56, 6.57-6.67).

12.     The Petition includes claims of negligence and negligent entrustment against Pagourtzis' parents [*id.* at ¶¶6.1-6.7, 6.24-6.33], and claims of assault and battery against Pagourtzis.  (*Id.* at ¶¶6.73-6.76, 6.77-6.79.)

13.     Regardless of the title of the claim or count asserted, the theory advanced against the Tennessee Defendants for Plaintiffs' claimed damages is predicated on a significant federal issue—namely, whether the Tennessee Defendants unlawfully sold ammunition to Pagourtzis in violation of federal law.   The joinder of removable and non-removable claims makes the entire action removable under 28 U.S.C. § 1441(c)(1).

## IV.  FEDERAL QUESTION JURISDICTION

14.     Federal question jurisdiction exists because Plaintiffs' negligence and negligence *per se* claims are both predicated on their theory that the Tennessee Defendants directly violated the federal Youth Handgun Safety Act, 18 U.S.C. § 922(x)(1)(B), and that they aided and abetted, *see* 18 U.S.C. §§ 2, 371, a violation of the related counter-part, 18 U.S.C. § 922(x)(2)(B).   The operative language of subparts (x)(1)(B) and (x)(2)(B) are the same:

> (1)   It shall be unlawful for a person to sell, deliver, or otherwise transfer to a person who the transferor knows or has reasonable cause to believe is a juvenile—
>
> (A)  a handgun; or
> **(B) ammunition that is suitable for use only in a handgun.**
>
> (2)  It shall be unlawful for any person who is a juvenile to knowingly possess—

5

(A)   a handgun; or

(B)   **ammunition that is suitable for use only in a handgun.**

15.     Specifically, Plaintiffs claim that the Tennessee Defendants violated 18 U.S.C. § 922(x)(1)(B) through LuckyGunner's alleged knowing transfer of .38 caliber ammunition to Pagourtzis, a 17 year old juvenile.  (*See e.g.*, Ex. B-1, Petition at ¶¶6.21-6.22; 6.38; 6.42-6.43.)

16.     A significant federal question lies in the interpretation and application of 18 U.S.C § 922(x)(1)(B), a violation of which requires two parts: (1) the defendant must know or have reasonable cause to believe the purchaser of the ammunition is juvenile, and (2) the ammunition at issue must be "suitable for use only in a handgun."  Plaintiffs' allegation that any of the Tennessee Defendants, including LuckyGunner, knew or had reasonable cause to believe that Pagourtzis was a juvenile at the time of the online sale is implausible on its face and legally barred. *See Phillips v. LuckyGunner, LLC*, 84 F.Supp.3d 1216, 1224 (D. Colo. 2015) (granting LuckyGunner's Rule 12(b)(6) motion and rejecting plaintiff's theory that online retailers with "no human contact with the buyer" who later committed heinous crimes could have knowingly violated 18 U.S.C. § 922(d)(3)), appeal dismissed, United States Circuit Court of Appeals, Docket No. 15-1153 (10th Cir. July 21, 2015)).[2] The significant federal issue, however, sits in this never before interpreted phrase in 18

---

[2] The pleadings-based dismissal in *Phillips*, under a conspicuously similar fact pattern, was premised, in part, on the broad federal immunity conferred on ammunition sellers by the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901 *et seq*.  This federal defense, however, is not the basis for removal.

U.S.C. § 922(x)(1)(B) and (x)(2)(B): "ammunition that is suitable for use only in a handgun."

17.    The Gun Control Act governs the legal obligations of Federal Firearms License ("FFL") holders and non-FFL holder differently.  Indeed, LuckyGunner is not alleged to (nor does it) hold an FFL in connection with the sales of ammunition at issue. (Ex. B-1, Petition at ¶5.16, fn. 2.)  LuckyGunner is not legally obligation to hold an FFL.[3]

18.    Plaintiffs' lawsuit against the Tennessee Defendants seeks to fundamentally change how Congress intended to govern transfers of ammunition between persons or entities that do not hold FFLs and persons under the age of twenty-one (21), including juveniles as defined by 18 U.S.C. § 922(x)(5).  Plaintiffs' claims are premised on a flawed interpretation of the operative language – that is, Plaintiffs seek to create a violation of 18 U.S.C. § 922(x)(1)(B) and (x)(2)(B) when a non-FFL transfers ammunition to a juvenile even when the ammunition is *not* "suitable for use only in a handgun."  By extension, Plaintiffs are attempting to rewrite federal law by seeking to impose—through judicial fiat—a duty on non-FFL holders to conduct background checks on ammunition purchasers, a legal process impacting both the transferors and transferees that no federal (or Texas state) statute requires.

---

[3] An FFL is required for any person engaged in the business of manufacturing, importing, or dealing in firearms.  18 U.S.C. § 922(a)(1)(A).  LuckyGunner is not alleged to (and does not) engage in any of this activity. That LuckyGunner sells ammunition online does not alter its status or require it to hold an FFL.  Indeed, many non-FFLs lawfully and routinely possess and transfer ammunition.  Examples include the vast majority of Americans involved in the shooting sports.

19.     Plaintiffs' claims against the Tennessee Defendants qualify as a civil action "arising under the Constitution, laws, or treaties of the United States."  *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (quoting 28 U.S.C. § 1331 and recognizing "[a] longstanding, if less frequently encountered, variety of federal 'arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."); *see  also Bd. Of Commissioners of Se. Louisiana Flood Prot. Auth.-E. v Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 724-27 (5th Cir. 2017) (applying *Grable* and affirming district court's ruling that the plaintiff's negligence and nuisance claims necessarily raise federal issues sufficient to justify federal jurisdiction, concluding "the Board's negligence and nuisance claims thus cannot be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law.").

20.     Under *Grable*, federal question jurisdiction exists with respect to state-law claims if such claims "[1.] necessarily raise a stated federal issue, [that is 2.] actually disputed and [3.] substantial, [and 4.] which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

21.     With respect to the first *Grable* factor, the Petition plainly states a federal issue, as it is replete with express references to and reliance on 18 U.S.C. §§ 922(x)(1)(B) and (x)(2)(B).  Plaintiffs do not allege a violation of any Texas state statutes that govern the minimum age to purchase certain calibers of cartridges from a non-FFL.  This is

8

"necessarily" a "federal issue." *Grable*, 545 U.S. at 314; *see also id*. at 315 (recognizing that parties might find value before federal judges with experience in federal tax matters); *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272 (Fed. Cir. 2007) ("The litigants will also benefit from federal judges who have experience in claim construction and infringement matters."). A federal court is best equipped to interpret the operative phrase of 18 U.S.C. §§ 922(x)(1)(B) and (x)(2)(B). *See Grable*, 545 U.S. at 315 (recognizing that parties might find value before federal judges with experience in federal tax matters); *Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262, 1272 (Fed. Cir. 2007) ("The litigants will also benefit from federal judges who have experience in claim construction and infringement matters."). A federal forum's interpretation of the federal statutory provision is also necessary to ensure uniformity of the interpretation of 18 U.S.C. § 922(x)(1)(B) and (x)(2)(B). Indeed, the "interpretation of the Gun Control Act is a federal question." *Knight v. Wal-Mart Stores, Inc.*, 889 F. Supp. 1532, 1538 (S.D. Ga. 1995).

22.     With respect to the second and third *Grable* factors, Plaintiffs' repeated claim that the Tennessee Defendants violated 18 U.S.C. § 922(x)(1)(B) as the basis for their two underlying theories of liability—negligence and negligence *per se*—underscores the dispute exists and is substantial. *See Grable*, 545 U.S. at 313 (A substantial federal issue is one that "indicat[es] a serious federal interest in claiming advantages thought to be inherent in in a federal forum."). For example, the *Grable* Court noted that the "meaning of the federal tax provision is an important federal law that sensibly belongs in federal court." *Id*. at 315.   Plaintiffs' hollow suggestion that a non-FFL is categorically prohibited from

9

transferring .38 special caliber cartridges to a certain class of persons is incorrect because a long list of commercially available long-guns (*i.e.*, not "a handgun") designed to fire such ammunition exists.  Nor could Plaintiffs plausibly plead facts to support their false contention.[4]  And it is simply not "proper to assume that [a plaintiff] can prove facts that it has not alleged."  *Associated Gen. Contractors of Calif. V. Calif. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

23.     Not only are Plaintiffs' claims that the Tennessee Defendants violated 18 U.S.C. § 922(x)(1)(B) and aided in violation of § 922(x)(2)(B) flatly wrong, the interpretation of the operative phrase of these provisions is one of first impression; indeed, a first interpretation that will have lasting impact on federal law. *See Grable*, 545 U.S. at 313 (holding that an important and limiting factor for finding federal-question jurisdiction is whether a plaintiffs' claims "really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law." (quoting *Shulthis v.*

---

[4] A "handgun" is defined by 18 U.S.C. § 921(a)(29). In contrast, long-guns, i.e., a "shotgun" and a "rifle" are defined by 18 U.S.C. § 921(a)(5) and (a)(7), respectively. Commercially available rifles chambered in .38 special include: http://www.winchesterguns.com/products/rifles/model-1873/model-1873-current-products/model-1873-carbine.html (last visited on May 19, 2020); http://www.winchesterguns.com/products/rifles/model-1866/model-1866-current-products/1866-deluxe-octagon.html (last visited on May 19, 2020); https://www.henryusa.com/rifles/big-boy-x-model/ (last visited on May 19, 2020); https://www.henryusa.com/rifles/single-shot-rifle/ (last visited on May 19, 2020); https://www.henryusa.com/rifles/henry-big-boy-carbine/ (last visited on May 19, 2020); https://rossiusa.com/lever-action/r92-357mag-16-58-rds-triple-black/ (last visited on May 19, 2020); https://www.cimarron-firearms.com/1866-short-rifle-38-special-20-oct-barrel.html (last visited on May 19, 2020); https://www.cimarron-firearms.com/1866-carbine-with-saddle-ring-38-special-19-rnd-barrel.html (last visited on May 19, 2020); https://www.marlinfirearms.com/lever-action/model-1894/model-1894c (last visited on May 19, 2020); https://www.taylorsfirearms.com/long-guns/cartridge-rifles/1866-lever-action/1866-rifle.html (last visited on May 19, 2020); https://www.uberti-usa.com/1866-yellowboy-rifle (last visited on May 19, 2020).

*McDougal*, 225 U.S. 561, 569 (1912)). That Plaintiffs are also trying to expand a violation of 18 U.S.C. § 922(x)(1)(B) to a third-party logistics company, Red Stag, and the owners of LuckyGunner and Red Stag, only serves to further magnify the substantiality of the federal issue.

24.     With respect to the fourth *Grable* factor, this Court's interpretation of 18 U.S.C. § 922(x)(1)(B) is not only contemplated by Congress, it is essential.  Plaintiffs seek a rewrite of "suitable for use *only* in a handgun" (emphasis added) to read: "suitable for use in a handgun."  This edit would violate well-established rules of federal statutory construction by rendering Congress's use of the word "only" superfluous.  *Moskal v. United States*, 498 U.S. 103, 109 (1990) (noting the "established principle that a court should give effect, if possible, to every clause and word of a statute") (internal quotations and citation omitted).

25.     Were Plaintiffs' flawed interpretation of the operative phrase accepted, application of nationwide federal firearms statutes would forever be altered in ways not intended by Congress—effectively criminalizing transfers of commonly used hunting and sporting ammunition to persons under twenty-one years old, and, ultimately resulting in a patchwork of Gun Control Act violations that vary state to state. This is not an outcome Congress intended.

26.     In sum, the appropriate balance of the federal-state system will remain post-removal.  Plaintiffs' focused allegation with respect to the theory of liability presents the very type of circumstance where, although not expressly declared a federal claim by Congress, there is little risk of a deluge of state tort cases ending up in federal court.  *See*

11

*Grable*, 545 U.S. at 318-19 (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986)).  On the other hand, leaving the outcome of a never before interpreted provision of the Youth Handgun Safety Act—one which has widespread implications for all non-FFL holders' participation in their Second Amendment rights—would serve to rebalance and disturb national firearms policy.  *See NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1028 (2d Cir. 2014) (recognizing that a substantial federal issue existed where "resolution of the disputed federal law issue here would likely have far-reaching prospective consequences for the operation of national securities exchanges, particularly in conducting IPOs").

27.     Because Plaintiffs' claims against the Tennessee Defendants raise a federal question that meets the standard set by the Supreme Court in *Grable*, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

## V.  DIVERSITY JURISDICTION

28.     Diversity is an additional ground for jurisdiction because there is diversity between the parties properly served and the amount in controversy exceeds $75,000.  *See supra* at §II.  The Plaintiffs ask the Court to award over $1,000,000 in damages.  Therefore, the only question is whether there is diversity between the parties properly served for purposes of 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.").

29.     The forum defendant rule embodied in 28 U.S.C. § 1441(b)(2) states that a civil action otherwise removable "*solely*" under diversity of citizenship may not be removed if one or more of the parties in interest "properly joined *and served* as defendants" are citizens of the state in which the action is brought.

30.     Section 1441(b)(2) does not defeat removal under the facts of this case.  First, removal is based on both diversity and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(c).  Removal is not *solely* based on diversity.

31.     Second, while the Tennessee Defendants accepted service on May 12, 2020, the Texas defendants have not been properly served with the Original Petition.

32.     The Petition names three forum-state defendants – Antonios Pagourtzis, Rose Marie Kosmetatos, and Dimitrios Pagourtzis.   Based on the docket, there is no return of service on file for Antonios Pagourtzis and Rose Marie Kosmetatos.  To the extent that service was attempted on Dimitrios Pagourtzis, the return of service on file plainly indicates services was not proper. (*See* Ex. A-3, Return of Service) (Citation issued to Dimitrios Pagourtzis "c/o North State Hospital, 4730 College Drive, Vernon, TX 76384 – or anywhere [he] may be found.")  Instead of serving Dimitrios Pagourtzis at the listed address or in person, Plaintiffs served the Texas Secretary of State.  The affidavit of service recites "citation . . . was executed at 1019 Brazos Street, Austin, TX 78701 within the county of TRAVIS at 1:09 PM on Tue, May 12, 2020, by delivering a true copy to the within named DIMITRIOS PAGOURTZIS BY DELIVERING TO THE SECRETARY OF STATE OF THE STATE OF TEXAS BY DELIVERING TO ITS DESIGNATED AGENT, MICHAEL ORTA." *Id*.  This service is improper on its face.

13

33.     Further, under the Texas Health & Safety Code § 571.010, proper service on Pagourtzis, a psychiatric patient at North State Hospital, required Plaintiffs' to serve "[t]he facility administrator or the superintendent, supervisor, or manager of [the] inpatient mental health facility."   Plaintiffs failed to properly serve Pagourtzis under Texas law.

34.     Because service on Dimitrios Pagourtzis is facially defective and improper under Texas Health & Safety Code § 571.010, the Tennessee Defendants' removal under § 1441(b)(2) is appropriate and no consent from the Texas Defendants is necessary for removal.  The Fifth Circuit permits "snap removal" under § 1441(b)(2) in cases like this where Plaintiffs have formally effected service on the non-forum state defendants, yet failed to properly effect service on the forum state defendants.  According to the Fifth Circuit:  "A non-forum defendant may remove an otherwise removable case even when a named defendant who has yet to be properly joined and served is a citizen of the forum state." *Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) (internal quotations omitted).  The Court found the text of § 1441(b)(2) unambiguous and therefore did not have "any doubt about the propriety of removal" under the procedural circumstances identical to this case.  *Id*.

35.     Thus, the Tennessee Defendants' removal under § 1441(b)(2) is proper.

## VI.  ADDITIONAL PROCEDURAL MATTERS

36.     In accordance with Local Rule 81, this Notice of Removal is accompanied by the following documents:

    A.     All executed process in this case;

B.     All pleadings asserting causes of action, e.g., petitions, counterclaims, cross actions, third party actions, interventions and all answers to such pleadings;

C.     The docket sheet;

D.     A list of all counsel of record, including address, telephone numbers and parties represented; and

E.     An index of the materials being filed. *See* Exhibits A-E.

37.     Upon filing this Notice of Removal, the Tennessee Defendants will provide prompt written notification to Plaintiffs and will file a Notification of Removal, attaching a copy of this Notice of Removal, with the Clerk for County Court at Law No. 3.

38.     Upon removal, the Court "shall" sever from the action all non-removable claims by Plaintiffs against Pagourtzis and his parents and remand the severed claims to County Court at Law No. 3.  *See* 28 U.S.C. § 1441(c)(2).

39.     This case is related to two other matters pending before the Galveston Division, *Yanas, et al. v. Pagourtzis, et al.*, Case No. 3:20-cv-00141 and  *Tisdale, et al. v. Pagourtzis, et al.*, Case No. 3:20-cv-00141.

40.     A jury has been demanded in the underlying case.

## VII.  CONCLUSION

41.     THEREFORE, the Tennessee Defendants remove the underlying case and preserve any and all rights and defenses, including those available under Rule 12 of the Federal Rules of Civil Procedure.

4811-3765-9837.1

RESPECTFULLY SUBMITTED,

*/s/ A.M. "Andy" Landry III*
A.M. "Andy" Landry III
State Bar of Texas # 11868750
S.D. Texas Bar # 15187
GRAY REED & MCGRAW LLP
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
Telephone (713) 986-7000
Facsimile (713) 986-7100
Email: alandry@grayreed.com

**ATTORNEY IN CHARGE,
LUCKYGUNNER, LLC D/B/A
LUCKYGUNNER.COM, RED STAG
FULFILLMENT, LLC,
MOLLENHOUR GROSS, LLC,
JORDAN MOLLENHOUR AND
DUSTIN GROSS**

OF COUNSEL:

Andrew A. Lothson (PHV application
forthcoming)
SWANSON, MARTIN & BELL, LLP
330 North Wabash, Suite 3300
Chicago, Illinois 60611
Office:  (312) 321-9100
Direct:  (312) 923-8274
Fax:    (312) 321-0990
Email:  alothson@smbtrials.com

16

## CERTIFICATE OF SERVICE

I certify that on May 20, 2020, a copy of this document was served on all counsel in accordance with the Federal Rules of Civil Procedure through use of the Court's electronic-notification system, which provides automatic notice of service to registered users.  This document has also been served via First Class Mail and/or by email on the following recipients:


*Via first class mail, email and e-filing:*
The Chandler Law Firm, LLP
Sherry Scott Chandler
Lewis M. Chandler
4141 Southwest Freeway, Suite 300
Houston, Texas 77027
(713) 228-8508 (Telephone)
(713) 228-8507 (Facsimile)
sherry@chandlerlawllp.com
lewis@chandlerlawllp.com

*Via first class mail:*
Dimitrios Pagourtzis
c/o North State Hospital
4730 College Drive
Vernon, TX 76384


*/s/ A.M. "Andy" Landry III*
A.M. "Andy" Landry III